FELDMANN v. KINSLOW.

256 S. W. 2d 327

Opinion delivered March 23, 1953.

Rehearing denied April 20, 1953.

*E. L. Hollaway,* for appellant.

*Reece Caudle* and *Richard Mobley,* for appellee.

WARD, Justice. Appellees, T. A. Kinslow and Imogene Kinslow [husband and wife] in April, 1950, sold their home to appellants, Karl Feldmann and Olga Feldmann [husband and wife] for $4,500. Appellees' property was equipped for raising chickens and the said sale and purchase price included 7 brooders, 7 automatic waterers and 100 feeders, as is evidenced by the "Agreement of Sale" entered into April 3, 1950, by the parties hereto and a real estate agent, J. H. Roper. The transaction was consummated on April 11, 1950, when appel-

lants executed and delivered to appellees a mortgage securing the payment of four notes of the same date totaling $4,500. The first three notes were for $1,000 each and the other note was for $1,500, all with interest at 6% per annum from date. The first note was due April 1, 1951, and the others were due one, two and three years thereafter. The mortgage provided that if any note [with no mention of default in interest] was not paid when due, all the notes would become due and payable at the option of the holder. In addition to the land, the mortgage covered an ice cream box and a cold drink box.

On May 3, 1951, appellees filed a complaint to foreclose the mortgage, alleging appellants had failed to pay the first note due April 1, 1951, and also the interest on all the notes, and asked for judgment in the amount of $4,500 on the notes and in the amount of $286.50 for accumulated interest.

Appellants filed an answer and two amendments thereto in which they pleaded, in substance, that while they signed the notes and mortgage, they had paid $1,000 on the purchase price of the land and, therefore, only owed a balance thereon of $3,500. The answer [and amendments] also set out that appellants, in connection with the real estate transaction, had bought a stock of merchandise [at invoice price of $1,751.67] which was in a building on the land, that they had purchased some other items from appellees, which will be mentioned later, and that they had paid for all these in addition to the $1,000 on the land.

Appellees filed no reply to the allegations in the answer and amendments thereto.

The trial court found that appellants were due a credit of $27.9 for snuff sold and $339.37 for payments to the Arkansas Valley Feed Mill, and, deducting the total of these two credits from $4,500, gave judgment against appellants for the difference of $3,881.63 as principal and $468.67 for interest, and ordered a sale of the property.

We have concluded the chancellor's findings are against the weight of the evidence, and since the decision we make depends upon the evaluation of the evidence, we will discuss it in some detail.

Although this suit started as a foreclosure proceeding, as above stated, and although appellees filed no denial of the allegations in appellants' answer and the amendments thereto, in order to rebut the testimony of appellants as to certain payments, appellee, T. A. Kinslow, entered in the record, as an exhibit to his testimony, a statement which will clarify our further observations and which we copy in full below. We have numbered the different items for clarity and convenience:

(Exhibit A)

1. Total Real Estate ....................................................$4,500.00
2. Stock of Merchandise ......................................... 1,751.67
3. Ice Cream Box ................................................... 300.00
4. Cold Drink Box ................................................. 200.00
5. Oil for Broiler House ......................................... 147.00
6. Stoves for House and Store ............................... 50.00
7. Lumber across the road .................................... 175.00
8. Scales, Knives, Tire Gauge, Rug for House, Hot Patch Machine and other items .................. 76.37

$7,200.04

9. Paid by Real Estate Mortgage ..........................$4,500.00
10. Cash ................................................................ 2,000.00
11. Snuff resold ..................................................... 204.67
12. Paid Arkansas Valley Fee ............................... 203.37
13. Traded out in Store ......................................... 292.00

$7,200.04

It will be seen from the above that appellees now claim that the total purchases made by appellants amounted to $7,200.04, or $2,700.04 more than the price of the land. All of these items except 1 and 2 are disputed by appellants. It is our conclusion that the evidence

shows appellees have sought to overcharge appellants in the sum of $580 arrived at by items as follows:

Item 3—Ice cream box, $300. Although the testimony is in dispute, we think $200 was a fair valuation. The positive testimony was that appellants had paid $221 for the box and that it had been used since.

Item 4—Cold drink box, $200. The evidence indicates that the Coca-Cola Company valued the box at $120 and we accept that figure. By appellants' testimony we have valued this item and the one before too high.

Item 5—Oil for broiler house, $147. Convincing testimony clearly indicates there could not have been more than 200 gallons and that the price was 14 cents per gallon. We think it could not have been worth more than $28.

Item 6—Stoves for house and store, $50. Evidence indicates these were worth not more than $13.50 and that appellants have already paid for them.

Item 7—Lumber across the road, $175. Positive evidence shows the value could not have been more than $20.

Item 8—Scales, knives, etc., $76.37. The best evidence shows these items were of much less value and we accept appellants' statement that they have been paid for.

The other items on Exhibit "A" show total payments of $7,200.04, but we think the evidence shows a larger amount.

Items 9 and 10 are not challenged by appellants.

Item 11—Snuff resold, $204.67. We accept the finding of the chancellor that the amount should be $279.

Item 12—Arkansas Valley Fee, $203.37. We accept the finding of the chancellor that the amount should be $339.37.

Item 13—Traded out at store, $292. This item is not challenged by appellants.

In addition to the above the evidence shows that appellants made other payments as follows:

1. The 18 sheet inventory in T. A. Kinslow's handwriting shows: cash $5.00 and a payment of $380.

2. A check in evidence shows a payment to T. A. Kinslow of $10 on April 8, 1950.

It will be seen from the above that appellants have paid an excess of $605.33 over what appellees gave them credit for. This amount added to the overcharge of $580 gives appellants a total credit of $1,185.33.

This result leads us to a consideration of another phase of the case, and to our final determination.

Appellants strongly contend, and we agree, that when the first payment of $1,000 was made on April 4, 1950, by check to J. H. Roper, the real estate agent, it was to apply on the purchase price of the real estate, thereby leaving a balance of only $3,500. The "Agreement of Sale", referred to above, states that $1,000 was to be paid down and the balance would be $3,500. It is true appellants signed the notes and mortgage for $4,500, but they claim they did not fully understand and relied largely on Mr. Kinslow, who was a preacher and their pastor. This contention is not unreasonable in view of the fact that appellants are both old, are of German nationality, and speak and understand our language with difficulty. We are finally convinced that the real estate notes should be credited with $1,000 because otherwise there would be an overpayment by appellants, by approximately the same amount, on the other items purchased from appellees.

Our final conclusion is that the first note for $1,000 due April 1, 1951, has been paid and that the foreclosure was premature. It is true that we have found from the evidence that appellants are due credits in excess of $1,000, but our holding is that it merely cancels the $1,000 note. We do this for two reasons. First, it is impossible to tell from the state of the record exactly what the excess should be to a mathematical certainty, and, second, if appellants have overpaid on any purchases, it results

from their own mistake and they have not asked for any such recovery.

It follows, of course, that appellants owed no interest on the first note for $1,000 which was paid at the time of its execution but are obligated to pay interest on the remaining three notes.

Reversed for further proceedings not inconsistent with this opinion.

The Chief Justice concurs in part and dissents in part.

GRIFFIN SMITH, Chief Justice, concurring in part and dissenting in part. I would not object to sending the cause back for further development of matters that are somewhat obscure. However, I dissent from the majority's specific findings in respect of credits that are directed to be given, believing that the ends of justice would be best served through remand of the entire cause.